**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SUNGARD AVAILABILITY SERVICES CAPITAL, INC. *et al.*,[1] | ) ) | Case No. 19-22915 (RDD) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

### ORDER (I) APPROVING THE DISCLOSURE STATEMENT AND CONFIRMING THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF SUNGARD AVAILABILITY SERVICES CAPITAL, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

having:

a.      distributed, on or about April 1, 2019: (i) the *Joint Prepackaged Plan of Reorganization of Sungard Availability Services Capital, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as the same may have been modified, supplemented, and amended, the "Plan");[2] (ii) the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Sungard Availability Services Capital, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as the same may have been modified, supplemented, and amended, the "Disclosure Statement"); and (iii) the *Notice of Commencement of Chapter 11 Cases and Hearing on First Day Motions* (the "Combined Hearing Notice"), which provided a summary of the Plan;

---

[1]   The last four digits of the Debtors' tax identification numbers are Sungard Availability Services Capital, Inc. (7677); Sungard Availability Services Holdings, LLC (6403); Sungard Availability Services Technology, LLC (9118); Inflow LLC (9489); Sungard Availability Services, LP (6195); Sungard Availability Services VeriCenter Inc. (4039); Sungard Availability Network Solutions, Inc. (1034).  The location of the Debtors' service address for purposes of these chapter 11 cases is:  50 Main Street, Suite 1014, White Plains, NY 10606.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

b.      posted, on April 1, 2019, the Plan and Disclosure Statement on the "public" side of the Credit Agreement Lenders' and Noteholders' data sites and on the Prime Clerk public website;

c.      published, on April 4, 2019 and April 5, 2019 in each of *The Wall Street Journal* and the *Financial Times, International Edition*, respectively, notice of the date and time set for the hearing to consider approval of the Disclosure Statement and confirmation of the Plan (the "Combined Hearing"), as evidenced by the *Affidavit of Publication*, filed contemporaneously herewith, (the "Publication Notice");

d.      solicited votes on the Plan, beginning on or about April 5, 2019 through April 26, 2019, by serving copies of the Plan, Disclosure Statement, and Ballots for voting to accept or reject the Plan to those Holders of Claims entitled to vote on the Plan in accordance with the terms of chapter 11 of the Bankruptcy Code, the Bankruptcy Rules, the *Amended Procedural Guidelines for Prepackaged Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of New York*, as amended, effective June 27, 2013 (as adopted by General Order M-387) (the "Guidelines"), and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules");

e.      distributed, on April 15, 2019, the *Notice of Filing Plan Supplement and Hearing to Consider Confirmation of Plan* (as the same may have been modified, supplemented, and amended, the "Plan Supplement");

f.      posted, on April 15, 2019, the Plan Supplement on the "public" side of the Credit Agreement Lenders' and Noteholders' data sites and on the Prime Clerk public website;

g.      posted, on April 26, 2019, the Debtors' first day motions on the "public" side of the Credit Agreement Lenders' and Noteholders' data sites and on the Prime Clerk public website;

h.      commenced, on May 1, 2019 (the "Petition Date"), the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code;

i.      filed, on the Petition Date:  (i) the Plan [Docket No. 17]; (ii) the Disclosure Statement [Docket No. 16]; (iii) the *Debtors' Motion For Entry Of An Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Establishing Plan and Disclosure Statement Objection and Reply Deadlines and Related Procedures, (III) Approving the Solicitation Procedures, (IV) Approving the Combined Hearing Notice, (V) Directing that a Meeting of Creditors Not Be Convened, and (VI) Granting Related Relief* [Docket No. 15] (the "Combined Hearing Motion"); and (iv) the *Declaration of James Daloia of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Joint Prepackaged Chapter 11 Plan of Reorganization of Sungard Availability Services Capital, Inc. and Its Debtor Affiliates Pursuant to Chapter 11*

*of the Bankruptcy Code* [Docket No. 18] (the "Voting Certification"), which details the results of the Plan voting process and, among others, certifies that, as of the voting deadline, extended for holders of Claims in Class 3 to April 30, 2019, 100% in amount and 100% in number of holders of Claims in Class 3 entitled to vote on the Plan and 100% in amount and 100% in number of holders of Claims in Class 4 entitled to vote on the Plan voted to accept the Plan;

j.    filed, on the Petition Date, (i) the *Prime Clerk Solicitation Affidavit* (the "Solicitation Affidavit"), filed contemporaneously herewith, and (ii) the *Affidavit of Service* with respect to notice of the Combined Hearing, filed contemporaneously herewith (the "Combined Hearing Notice Affidavit," and, together with the Publication Notice and the Solicitation Affidavits, the "Affidavits");

k.    filed, on the Petition Date:  (i) the *Debtors' Memorandum of Law in Support of an Order Approving the Debtors' Disclosure Statement for, and Confirming, the Joint Prepackaged Plan of Reorganization of Sungard Availability Services Capital, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 19] (the "Confirmation Brief"); (ii) the *Declaration of Eric Koza, Chief Restructuring Officer at Sungard Availability Services Capital, Inc., (I) in Support of Chapter 11 Petitions and First Day Pleadings and (II) Pursuant to Local Bankruptcy Rule 1007-2* [Docket No. 3] (the "First Day Declaration"); (iii) the *Declaration of Eric Koza in Support of Confirmation of the Joint Prepackaged Plan of Reorganization of Sungard Availability Services Capital, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 20] (the "Koza Declaration"); (iv) the *Declaration of Samuel M. Greene in Support of Confirmation of the Joint Prepackaged Plan of Reorganization of Sungard Availability Services Capital, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 22] (the "Greene Declaration"); and (v) the *Declaration of Michael L. Mansfield in Support of Confirmation of the Joint Prepackaged Plan of Reorganization of Sungard Availability Services Capital, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 21]  (the "Mansfield Declaration"); and

l.    operated their businesses and managed their properties during the Chapter 11 Cases as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

The United States Bankruptcy Court for the Southern District of New York (the "Court")

having:

m.    reviewed the solicitation procedures regarding votes to accept or reject the Plan (the "Solicitation Procedures");

3

n.    reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Plan Supplement, the First Day Declaration, the Koza Declaration, the Greene Declaration, the Mansfield Declaration, the Voting Certification, and all other filed pleadings, exhibits, statements, affidavits, declarations, and comments regarding Confirmation of the Plan, including the objection thereto by United States Trustee for Region 2 (the only objection to confirmation of the Plan);

o.    reviewed the discharge, compromises, settlements, releases, exculpations, and injunctions set forth in Article VIII of the Plan;

p.    held the Combined Hearing on May 2, 2019, at 2:00 p.m., prevailing Eastern Time, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

q.    heard the statements, representations, arguments, and objections made by counsel in respect of approval of the Disclosure Statement and Confirmation of the Plan;

r.    overruled any and all objections to the Plan and Confirmation thereof and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated herein; and

s.    taken judicial notice of the papers and pleadings filed and all orders entered in the Chapter 11 Cases.

**NOW, THEREFORE**, and after due deliberation, including for the reasons stated in its bench ruling at the Combined Hearing it appearing to the Court that notice of the Combined Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and Confirmation and for those entitled to vote to accept or reject the Plan to submit such acceptance or rejection have been adequate and appropriate as to all Entities affected or to be affected by the Plan and the transactions contemplated thereby, including for purposes of 11 U.S.C. §§ 1125 and 1126 and Fed. R. Bankr. P. 2002, 3016, 3017 and 3018, and that the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Combined Hearing establish just cause for the relief granted herein; and upon the record of the Combined Hearing and the representations made thereat; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact, conclusions of law, and orders:

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**I.     Jurisdiction and Venue**

1.      Venue in this Court was proper as of the Petition Date pursuant to 28 U.S.C. §§ 1408 and 1409 and continues to be proper during these Chapter 11 Cases.  The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b).  The Court has exclusive jurisdiction to determine whether the Disclosure Statement contains adequate information for purposes of section 1125 of the Bankruptcy Code.  Approval of the Disclosure Statement and Confirmation of the Plan are core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(L) and (O) that, under the United States Constitution, the Court may decide by final order.

**II.    Burden of Proof**

2.      The Debtors have met their burden of proving that the Plan complies with each element of sections 1129(a) and, to the extent applicable, 1129(b) of the Bankruptcy Code by a preponderance of the evidence.

**III.   Notice of the Combined Hearing**

3.      Notice of the Combined Hearing was appropriate and satisfactory and is approved in all respects.

**IV.    Combined Hearing on the Disclosure Statement and Plan Confirmation**

4.      In light of the fact that the Plan, as modified hereby provides for the unimpairment of all Allowed General Unsecured Claims under section 1124 of the Bankruptcy Code and that there is unanimous support from all voting classes, the Debtors' need to maintain their customer relationships and emerge from chapter 11 as expeditiously as possible provides a basis for holding, and it was appropriate to hold, a Combined Hearing on the Debtors' request for approval of the

Disclosure Statement and Confirmation of the Plan under sections 105(d)(2)(B)(vi) and 1125(g) of the Bankruptcy Code, Bankruptcy Rule 3018(b), and the Guidelines.

## V.    Approval of the Disclosure Statement

5.    The Disclosure Statement is approved in all respects as containing adequate information under section 1125 of the Bankruptcy Code and complying with applicable nonbankruptcy law under section 1125(g) of the Bankruptcy Code, the solicitation of votes to accept or reject the Plan also being in compliance with applicable nonbankruptcy law.

## VI.    Confirmation of the Plan

6.    The Plan, a copy of which is attached hereto as **Exhibit A**, as modified by this Order (which modification does not require further notice or hearing under Fed. R. Bankr. P. 3019) is confirmed pursuant to section 1129 of the Bankruptcy Code.  The terms of the Plan, the Plan Supplement, and any other documents filed in connection with the Plan and/or executed or to be executed in connection with the transactions contemplated by the Plan (including the Restructuring Transactions), and all amendments and modifications thereof made in accordance with the Plan and this Confirmation Order, are hereby approved; *provided*, that the Debtors, subject to the Restructuring Support Agreement and the consents required therein, may make non-material modifications to the Plan Supplement prior to the Effective Date.

7.    Any and all objections to the Plan that have not been withdrawn or resolved prior to the Combined Hearing or as set forth in this Confirmation Order are hereby overruled.

8.    The documents contained in the Plan Supplement are integral to the Plan and are hereby approved by the Bankruptcy Court, and the Debtors and the Reorganized Debtors (as applicable) are authorized to take any and all actions required under the Plan, the Plan Supplement, and all exhibits thereto to effectuate the Plan and the Restructuring Transactions (as defined below).

9.      The terms of the Plan, the Plan Supplement, and the exhibits thereto are incorporated herein by reference and are an integral part of this Confirmation Order.  The terms of the Plan, the Plan Supplement, all exhibits thereto, and all other relevant and necessary documents shall be effective and binding as of the Effective Date.  The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document in this Confirmation Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision.

10.     The discharge, compromises, settlements, releases, exculpations, and injunctions set forth in Article VIII of the Plan, as modified  by this Confirmation Order, are hereby approved and will be effective immediately and binding on all parties in interest on the Effective Date.  For the avoidance of doubt, nothing in the Plan shall limit the liability of attorneys to their respective clients pursuant to rule 1.8(h) of the New York Rules of Professional Conduct.

11.     The Debtors shall cause to be served a notice of the entry of this Confirmation Order and occurrence of the Effective Date, substantially in the form attached hereto as **Exhibit B** (the "Confirmation Notice"), upon (a) all parties listed in the creditor matrix maintained by Prime Clerk, LLC and (b) such additional persons and entities as deemed appropriate by the Debtors, no later than five (5) business days after the Effective Date.  The Debtors shall cause the Confirmation Notice to be published in *The Wall Street Journal* and the *Financial Times* within seven (7) business days after the Effective Date.

## VII.    Solicitation

12.     The Solicitation Procedures complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other provisions of the Bankruptcy Code, and all other applicable nonbankruptcy rules, laws, and regulations.

**VIII.    Good Faith Solicitation**

13.    Based on the record before the Bankruptcy Court, the Debtors have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and, pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of the Consenting Stakeholders and each of their respective Affiliates, agents, representatives, members, principals, equity holders (regardless of whether such interests are held directly or indirectly), officers, directors, managers, employees, advisors, and attorneys have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan, and, therefore, are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**IX.    Immediate Binding Effect**

14.    Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, or otherwise, this Confirmation Order is a Final Order, and the period in which an appeal must be filed shall commence upon the entry hereof.  The terms of this Confirmation Order and the Plan, including the Plan Supplement, shall be immediately effective and enforceable and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(g), 6006(g), 6006(d), or 7062, and shall be deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether Holders of such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan or herein, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

**X.    Issuance and Distribution of the New Sungard AS Equity**

15.    All existing Interests in Sungard AS shall be cancelled as of the Effective Date. Subject to the Restructuring Transactions, Reorganized Sungard AS shall issue and distribute, or

otherwise transfer, the New Sungard AS Equity pursuant to the Plan.  The issuance of the New

Sungard AS Equity and any MIP Equity (to the extent applicable), shall be authorized without the

need for any further corporate action and without any further action by the Debtors, Reorganized

Debtors, Reorganized Sungard AS, or any of their equity holders, members, directors,

management, officers, or employees, as applicable.  The issuance and distribution, or other

transfer, on the Effective Date, of New Sungard AS Equity to the Distribution Agent for the benefit

of Holders of Allowed Claims in Class 3 and Class 4 (as applicable) in accordance with the terms

of Article III of the Plan shall be authorized.  All New Sungard AS Equity issued under the Plan

shall be duly authorized, validly issued, fully paid, and non-assessable (as applicable), and the

holders of New Sungard AS Equity shall be deemed as a result of having received distributions of

New Sungard AS Equity pursuant to the Plan to have accepted the terms of the New Operating

Agreement (solely in their capacity as members of Reorganized Sungard AS) and to be parties

thereto without further action or signature.  The New Operating Agreement shall be effective as of

the Effective Date and, as of such date, shall be deemed to (a) be valid, binding, and enforceable

in accordance with its terms, and each holder of New Sungard AS Equity shall be bound thereby

(without any further action or signature) in all respects, whether or not such holder has executed

the New Operating Agreement and (b) provide for the indemnification, defense, reimbursement,

exculpation, and/or limitation of liability of, and advancement of fees and expenses to, current and

former directors, officers, equity holders, managers, members, employees, accountants,

investment bankers, attorneys, other professionals, agents of the Debtors, and such current and

former directors', officers', and managers' respective Affiliates (each of the foregoing solely in

their capacity as such) to the fullest extent permitted by applicable law but solely to the extent as

set forth in Sungard AS's Indemnification Provisions, against any claims or causes of action

whether direct or derivative, liquidated or unliquidated, fixed, or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted.

16.     This Confirmation Order shall constitute (a) the approval by this Court of the New Organizational Documents and New Operating Agreement and all transactions contemplated thereby and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, and (b) authorization by this Court for the Reorganized Debtors to enter into and execute the New Organizational Documents and New Operating Agreement and such other documents as may be required to effectuate the issuance and distribution of the New Sungard AS Equity, provide guarantees and grant the security interests pursuant to the New Organizational Documents and New Operating Agreement.   Executed versions of the New Organizational Documents and New Operating Agreement shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms.

17.     All membership interests constituting the New Sungard AS Equity issued under the Plan on account of Class 3 Credit Agreement Claims and Class 4 Notes Claims and all other shares of New Sungard AS Equity shall be exempt from registration requirements under the Securities Act or any similar federal, state, or local law in reliance on section 1145(a) of the Bankruptcy Code to the maximum extent permitted by Law.   Except as otherwise provided in the Plan or the governing certificates or instruments (including the New Operating Agreement), any and all New Sungard AS Equity issued under the Plan (other than the MIP Equity (to the extent applicable)) will be freely tradable under the Securities Act by the recipients thereof, subject to: (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an

underwriter in section 2(a)(11) of the Securities Act, and compliance with any applicable state or foreign securities laws, if any, and any rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (b) the restrictions, if any, on the transferability of such Securities and instruments (including any such restrictions set forth in the New Operating Agreement); and (c) any other applicable regulatory approval.

18.    All New Sungard AS Equity issued pursuant to the Plan and this Confirmation Order shall be duly authorized, validly issued, fully paid, and non-assessable (as applicable).  Each distribution and issuance of the New Sungard AS Equity referred to in Article IV of the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Holder receiving such distribution or issuance.  The New Sungard AS Equity need not be issued through the facilities of the DTC.  The Debtors or the Reorganized Debtors may elect to issue New Sungard AS Equity through the facilities of the DTC, whether on the Effective Date or on a date after the Effective Date.    The Reorganized Debtors need not provide any further evidence (including, without limitation, any legal opinion) other than the Plan and this Confirmation Order to the DTC or any other person with respect to the treatment of the New Sungard AS Equity under applicable securities laws.  DTC shall be required to accept and conclusively rely upon the Plan or Confirmation Order in lieu of a legal opinion regarding whether the New Sungard AS Equity is exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

**XI.    Treatment of Executory Contracts and Unexpired Leases**

19.     Entry of the Confirmation Order shall constitute a Court order approving the assumptions or assumption and assignment, as applicable, of such Executory Contracts or Unexpired Leases as set forth in the Plan, pursuant to sections 365(a) and 1123 of the Bankruptcy Code; *provided* that entry of the Confirmation Order shall not constitute a determination by the Court that any contract, instrument, release, indenture, or other agreement (other than the Restructuring Support Agreement) constitutes an Executory Contract or Unexpired Lease, as applicable, under applicable non-bankruptcy law, with the rights of all parties regarding such matter being fully reserved and preserved in all respects, and the Court retains jurisdiction pursuant to Article XI of the Plan to resolve any matters related to Executory Contracts or Unexpired Leases.

20.     The Unexpired Leases listed on <u>Exhibit E</u> to the Plan Supplement are hereby rejected under sections 365 and 1123 of the Bankruptcy Code, and, as provided in the preceding paragraph, all other Executory Contracts and Unexpired Leases are being assumed, including, without limitation, D1 PropCo LLC, 1001 East Campbell Road, Richardson, Texas 75081; *provided, however*, that non-Debtor contract counterparties reserve their rights to object to the assumption any such contract or lease.

21.     To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.  None of the Restructuring Transactions taken by the Debtors or the Reorganized Debtors, as applicable, to effectuate the Plan

shall be deemed to trigger any "change of control" provision in any contract or agreement including any Executory Contract or Unexpired Lease.

22.    The rejection under sections 365 and 1123 of the Bankruptcy Code of the Executory Contracts and Unexpired Leases listed on the Schedule of Rejected Executory Contracts and Unexpired Leases is hereby authorized.

**XII.    Rejection Damages Claims**

23.    In the event that the rejection of an Executory Contract or Unexpired Lease by any of the Debtors results in damages to the other party or parties to such contract or lease, **a Claim for such damages shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors or their respective properties or interests in property as agents, successors, or assigns, unless a Proof of Claim is Filed with the Solicitation Agent and served upon counsel for the Debtors, the Reorganized Debtors, and the Consenting Creditors no later than thirty (30) days after the later of (a) the Effective Date or (b)  the date of entry of an order of the Bankruptcy Court (including this Confirmation Order) approving such rejection of such executory contract or unexpired lease.**  Any such Claims, to the extent Allowed, shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan.

**XIII.    Discharge of Claims**

24.    Except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan (including the Exit Facility Documents, the New Organizational Documents, and the New Operating Agreement): (a) the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of any and all Claims (including any Intercompany Claims resolved or compromised (consistent with the Restructuring

Transactions) after the Effective Date by the Reorganized Debtors), Interests (including any

Intercompany Interests Reinstated or cancelled and released (consistent with the Restructuring

Transactions) after the Effective Date by the Reorganized Debtors), and Causes of Action against

the Debtors of any nature whatsoever including demands, liabilities, and Causes of Action that

arose before the Effective Date, any liability (including withdrawal liability) to the extent such

liability relates to services performed by employees of the Debtors prior to the Effective Date and

that arises from a termination of employment, any contingent or non-contingent liability on

account of representations or warranties issued on or before the Effective Date, all debts of the

kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, any interest accrued

on Claims or Interests from and after the Petition Date, and all other liabilities against, liens on,

obligations of, rights against, and Interests in, the Debtors or any of their assets or properties,

(b) the Plan shall bind all holders of Claims and Interests, (c) all Claims and Interests shall be

satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be

extinguished completely, including any liability of the kind specified under section 502(g) of the

Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtors, the

Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and

properties any other Claims or Interests based upon any documents, instruments, or any act or

omission, transaction, or other activity of any kind or nature that occurred prior to the Effective

Date, in each case regardless of whether or not:  (i) a Proof of Claim based upon such debt or right

is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest

based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code;

(iii) the Holder of such a Claim or Interest has accepted, rejected, or failed to vote to accept or

reject the Plan; or (iv) any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests.

26.    This Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

## XIV.    Exit Facilities

26.    The Reorganized Debtors are hereby authorized, on or before the Effective Date (or as soon as reasonably practicable thereafter with respect to the Exit Revolver Facility), to enter into, and take such actions as necessary or desirable to perform under, the Exit Revolver Facility, the Exit Term Loan Facility, the New Term Loan, all Exit Facilities Documents, and all other documents or agreements related thereto, and all transactions contemplated thereby, including the payment or reimbursement of any fees, indemnities, expenses and other payments (including any backstop payments) under or pursuant to any such documents and agreements entered into or delivered in connection therewith.  The New Term Loan Credit Agreement and all other New Term Loan Documents shall be effective as of the Effective Date and, as of such date, shall be deemed to be valid, binding, and enforceable in accordance with their terms, and each lender of New Term Loans shall be bound thereby in all respects, whether or not such lender has executed the New Term Loan Credit Agreement.  On the Effective Date (or as soon as reasonably practicable thereafter with respect to the Exit Revolver Facility), the agents and lenders under the Exit Revolver Facility, the Exit Term Loan Facility, and the New Term Loan shall have valid, binding, perfected, and enforceable Liens on, and security interests in, all collateral specified in the respective Exit Facility Documents, as applicable, with the priorities set forth in the applicable Exit Facility Documents, intercreditor agreements (if any), and other documents related thereto, and subject only to such Liens and security interests as may be expressly permitted under the Exit Facility Documents, as applicable, the Reorganized Debtors and the agents and lenders granted

such Liens and security interests are each hereby authorized to make any and all filings and

recordings necessary or desirable in connection with such Liens and security interests.   The

obligations, guarantees, mortgages, pledges, Liens, and security interests granted pursuant to or in

connection with the Exit Revolver Facility, the Exit Term Loan Facility, and the New Term Loan

are, in each case, granted in good faith, for good and valuable consideration, and for legitimate

business purposes as an inducement to the lenders to extend credit thereunder and shall be, and

hereby are, deemed not to constitute a fraudulent conveyance or fraudulent transfer under the

Bankruptcy Code or any applicable non-bankruptcy law and shall not otherwise be subject to

avoidance, equitable subordination, or recharacterization and shall constitute legal, valid, binding,

and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms.

**XV.    Restructuring Transactions**

27.    On the Effective Date, the Debtors and the Reorganized Debtors, as applicable (and

each of their officers, members, directors, and managers), in each case subject to the Restructuring

Support Agreement and the consents required therein and with the reasonable consent of the

Required Consenting Creditors, shall be authorized to and may take all actions as may be necessary

or appropriate to effectuate the transactions described in, approved by, contemplated by, or

necessary to effectuate the Restructuring Support Agreement and the Plan, including the

Acquisition Transactions Exhibit (collectively, the "Restructuring Transactions"), including:

(a) the execution, delivery, filing, and/or recordation of any appropriate agreements or other

documents of merger, amalgamation, consolidation, restructuring, conversion, disposition,

transfer, formation, organization, dissolution, or liquidation, or other contracts, securities,

instruments, releases, and indentures, containing terms that are consistent with the terms of the

Plan, and that satisfy the requirements of applicable law and any other terms to which the

applicable Entities may agree, including the documents comprising the Plan Supplement;

(b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Entities agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, amalgamation, consolidation, conversion, or dissolution (including in respect of the dissolution of Sungard AS) pursuant to applicable state law; (d) the Acquisition Transactions; (e) such other transactions that are required to effectuate the Restructuring Transactions in the most tax efficient manner for the Debtors and Consenting Creditors, including any mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations; (f) the execution, delivery, and filing, if applicable, of the Exit Facility Documents; and (g) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law, all of which shall be authorized and approved in all respects, in each case, without the need for any approvals, authorization, consents, or any further action required under applicable law, regulation, order, or rule (including any action by the stockholders, members, directors, or managers of the Debtors or the Reorganized Debtors, as applicable) except for those expressly required under the Restructuring Support Agreement or pursuant to the Plan.  Any transfers of assets or equity interests effected, or any obligations incurred through the Restructuring Transactions, are hereby approved and shall not constitute fraudulent conveyances or fraudulent transfers or otherwise be subject to avoidance.

28.     This Confirmation Order shall constitute (a) the approval by this Court of the Restructuring Transactions, including, without limitation, the Acquisition Transactions Exhibit and the Acquisition Agreement, and all transactions contemplated thereby and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in

connection therewith, and (b) authorization by this Court for the Reorganized Debtors to enter into and execute the Restructuring Transactions, including, without limitation, the Acquisition Transactions Exhibit and the Acquisition Agreement, and such other documents as may be required to effectuate the transactions described in, approved by, contemplated by, or necessary to effectuate the Restructuring Support Agreement and the Plan.

29.    In accordance with section 1142 of the Bankruptcy Code and any provisions of the business corporation law of any applicable jurisdiction, including section 303 of the Delaware General Corporation Law, and subject to the Restructuring Support Agreement, without further action by this Court or the equity security holders, officers, members, managers or directors of any Debtor or Reorganized Debtor, the Debtors and the Reorganized Debtors, as well as the officers of the appropriate Debtor or Reorganized Debtor are authorized to:  (i) take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, all documents and agreements necessary to implement the Plan, the Definitive Documents, this Order and the transactions contemplated thereby or hereby; and (ii) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases, agreements and documents (including the Exit Facility Documents) necessary to implement, effectuate and consummate the Plan.

30.    Each Governmental Unit is hereby authorized to accept any and all documents, mortgages, security agreements, financing statements, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan, the Exit Facility Documents, the New Organizational Documents, and this Order.

## XVI.    Exemption from Certain Transfer Taxes and Recording Fees

31.    To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan (including the Restructuring Transactions) or pursuant to:  (a) the issuance, distribution,

transfer, or exchange of any debt, equity security, or other interest in the Debtors or the

Reorganized Debtors; (b) the creation, modification, consolidation, termination, refinancing,

and/or recording of any mortgage, deed of trust, or other security interest, or the securing of

additional indebtedness by such or other means; (c) the making, assignment, or recording of any

lease or sublease; (d) the grant of collateral as security for any or all of the Exit Facilities, as

applicable; or (e) the making, delivery, or recording of any deed or other instrument of transfer

under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale,

assignments, or other instrument of transfer executed in connection with any transaction arising

out of, contemplated by, or in any way under the Plan (including the Restructuring Transactions),

shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or

similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial

Code filing or recording fee, regulatory filing or recording fee, sales or use tax, or other similar

tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state

or local governmental officials or agents shall forego the collection of any such tax or

governmental assessment and accept for filing and recordation any of the foregoing instruments

or other documents without the payment of any such tax, recordation fee, or governmental

assessment.  All filing or recording officers (or any other Person with authority over any of the

foregoing), wherever located and by whomever appointed, shall comply with the requirements of

section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or

governmental assessment, and shall accept for filing and recordation any of the foregoing

instruments or other documents without the payment of any such tax or governmental assessment.

## XVII.  Provisions Regarding Certain Unexpired Leases of Non-Residential Real Property

32.    Notwithstanding anything in the Plan or this Confirmation Order to the contrary,

with respect to any assumed Unexpired Lease of nonresidential real property, nothing in the Plan

or in the Confirmation Order shall modify the Debtors' or  Reorganized Debtors' obligation, as applicable, to pay:  (a) amounts owed under the assumed Unexpired Lease of non-residential real property that are unbilled or not yet due as of the Effective Date, whether accruing prior to or after the effective date of assumption of such unexpired lease, such as for common area maintenance, insurance, taxes, and similar charges; and any regular or periodic ordinary course year-end adjustments and reconciliations of such charges provided for under the terms of the applicable Unexpired Lease, whether accruing prior to or after the effective date of assumption of such Unexpired Lease, as such charges become due in the ordinary course in accordance with the terms of the Unexpired Lease; (b) any percentage rent that may come due under the assumed Unexpired Lease of non-residential real property;  (c) any other obligations, including indemnification obligations (if any) that arise from third-party claims asserted with respect to or arising from the Debtors' use and occupancy of the premises prior to the Effective Date for which the Debtors had a duty to indemnify such Landlord pursuant to such Unexpired Lease, or the Debtors' or Reorganized Debtors' obligation to pay any postpetition expenses under such Unexpired Leases as they come due under the Unexpired Leases; and (d) any unpaid cure amounts or post-assumption obligations under the assumed Unexpired Lease of non-residential real property.

33.    Notwithstanding anything in the Plan or this Confirmation Order to the contrary, or any of the releases, discharges, injunctions or waivers set forth therein, nothing in the Plan or the Confirmation Order shall modify the rights, if any, of any counterparty to an Unexpired Lease of non-residential real property to assert any right of setoff or recoupment that such counterparty may have under applicable bankruptcy or non-bankruptcy law, including, but not limited to, the ability, if any, of such counterparties to setoff or recoup a security deposit held pursuant to the terms of their Unexpired Lease with the Debtors or the Reorganized Debtors.

34.     Notwithstanding anything to the contrary in the Plan or this Order, any Cure payable to 401 North Broad Street Lessee, LLC ("401 North Broad Street") on account of either the lease, dated November 20, 2009, for the Debtors' premises located at 401 North Broad Street, Philadelphia PA 19108 (together with any and all amendments and other agreements related thereto, collectively, the "Lease") or that certain Master License and Service Agreement by and between 401 North Broad Street and the Debtors, dated April 1, 2015 (together with any and all amendments and related service orders thereto, collectively, the "License" and together with the Lease, the "Agreements") shall be paid promptly on the Effective Date or at such other time as agreed to by the Debtors or the Reorganized Debtors (as applicable) and 401 North Broad Street; *provided*, *however*, that any Cure amounts not yet agreed as of the Confirmation Date shall be either agreed between the Debtors and 401 North Broad Street or otherwise determined by a final and non-appealable order entered by the Court determining such Cure.  The Debtors and 401 North Broad Street will work in good faith to reach an agreement on the remaining unpaid Cure amounts within thirty (30) days of Confirmation and, to the extent not resolved at the end of such period, may either agree to further extend for another 30 days or seek a hearing with the Bankruptcy Court on not less than 10-days' notice.  For the avoidance of doubt, any non-monetary defaults existing under the Agreements on account of the Lease (other than those non-monetary defaults arising by reason of the Debtors' bankruptcy, insolvency, financial condition, or any relevant provision of the Bankruptcy Code) shall not be affected by these Chapter 11 Cases.

35.     Notwithstanding anything to the contrary in any of the Definitive Documents (as that term is defined in the Plan), including, without limitation, the Restructuring Support Agreement, or in any other document that is necessary to effectuate the Plan, the Debtors' nexpired real property leases, datacenter agreements, colocation agreements, service orders, and any other

unexpired agreement relating to the foregoing with Digital Realty Trust, Inc. ("DRTI"), Digital Realty Trust, L.P. ("DRTLP"), or with any of DRTI or DRTLP's direct or indirect subsidiaries, affiliates, and/or their members (collectively, DRTI, DRTLP, their subsidiaries, affiliates, and/or members, "Digital Realty") are assumed as of the date of entry of this Order ("Digital Realty Assumed Leases"), and the Debtors shall perform in accordance with the terms of the Digital Realty Assumed Leases in the ordinary course of business; *provided* that the lease (and any agreement related thereto) located at 1725 Comstock Street, Santa Clara, California 95054, as reflected on Exhibit E-1 of the Plan Supplement (the "Digital Realty Rejected Lease," and together with the Digital Realty Assumed Leases, the "Digital Realty Leases") is rejected as of the date of entry of this Order, and the Debtors shall immediately surrender the premises, and Digital Realty shall have immediate access to repossess the premises and exercise any other right provided to Digital Realty under, relating to, and in connection with the Digital Realty Rejected Lease. Digital Realty and the Debtors reserve all rights with respect to: (i) setoff, recoupment, or the assertion of any lien by Digital Realty with respect to any of the Digital Realty Leases; (ii) cure costs relating to the Digital Realty Assumed Leases; (iii) claims relating to the rejection of the Digital Realty Rejected Lease; and (iv) any avoidance actions preserved by the Debtors under the Plan in response to disputes over cure costs and/or rejection damage claims and any affirmative defenses thereto relating to any of the Digital Realty Leases; *provided*, *further*, that, for the avoidance of doubt, the Debtors' preservation of avoidance action claims under the Plan shall be limited, solely with respect to Digital Realty, to the Digital Realty Rejected Lease in the event Digital Realty and the Debtors are unable to stipulate to an allowed claim relating to the rejection of such Rejected Lease, notwithstanding any disputes between Digital Realty and the Debtors that may exist with respect to cure costs relating to the Digital Realty Assumed Leases. For the avoidance of doubt,

Digital Realty, as such term is defined in this paragraph, is not a Releasing Party or a Released Party under the Plan.

36.     For the avoidance of doubt, Debtors are bound by all terms and conditions of that certain letter agreement dated as of April 23, 2019, by and among Debtor Sungard Availability Services, LP and CORESITE REAL ESTATE 70 INNERBELT, L.L.C. which shall govern, among other rights and obligations, the rejection of certain contracts related to the premises located at 70 Inner Belt Road, Somerville, Massachusetts 02143 and the Notice Regarding Executory Contracts and Unexpired Leases to be Rejected Pursuant to the Plan served on April 9, 2019, as amended, shall be deemed withdrawn

## XVIII. Provisions Regarding Certain Surety Providers

37.     Notwithstanding anything else in the Plan, Plan Supplement, Confirmation Order, or similar documents to the contrary, any and all indemnity agreement(s) (including any and all rider(s) or modification(s) thereto) between or involving Westchester Fire Insurance Company or its past, present, or future parents, subsidiaries, or affiliates (the "Surety") and any of the Debtors or any of the Debtors' non-Debtor affiliates shall be assumed and assigned, and any obligations owed to Surety with respect thereto shall be Allowed Administrative Claims under the Plan without the need for filing proofs of claim or objections to cure amounts, and any rights, liens, claims, and/or interests of Surety on any collateral, including, but not limited to, any proceeds due or to become due any of the Debtors or any of their non-Debtor affiliates with respect to any contract for which the Surety executed a bond or similar or related instrument, and any claims of setoff or recoupment,  shall not be released pursuant to the Plan or Confirmation Order. In addition, neither the Plan nor Confirmation Order shall serve as a release by the Surety of any claims against the Released Parties or any of the Debtors' affiliates.  Further, to the extent that the Surety pays any Claim of a third-party on account of its obligations as surety and subrogates to

such claim, such claim shall not be disallowed or effected pursuant to any provision of the Plan or Confirmation Order, and all of the rights, claims, liens, and security interests, including setoff or recoupment claims of any party to whom Surety is or may be subrogated, shall survive with equal force as the liens and/or claims of Surety as provided above.

## XIX.   Provisions Regarding Certain Statutory Tax Liens

38.     The Maricopa County Treasurer holds secured statutory tax liens for 2019 (the "Maricopa Liens" and the taxes related thereto the "Maricopa Taxes") on the Debtors' personal property located in Maricopa County (the "Maricopa Property").  The Maricopa Liens are prior and superior to all other liens on the Maricopa Property regardless of when another lien attached.  The Maricopa Taxes shall be paid in full as they become due and payable in accordance with Arizona law. Interest shall accrue at the statutory rate of 16% per annum until the Maricopa Taxes and interest are paid in full, if not timely paid.  The Maricopa Liens shall remain attached to the personal property until the taxes and interest are paid in full.

## XX.    Waiver of Section 341(a) Meeting

39.     As of the date of this Confirmation Order, the requirement that the U.S. Trustee convene a meeting of creditors pursuant to section 341(a) of the Bankruptcy Code is hereby waived.

## XXI.   Stay of Confirmation

40.     This Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(g), 6006(d), or 7062, for cause.

## XXII.  Final Order

41.     This Confirmation Order is a Final Order and the period within which an appeal must be filed commences upon the entry hereof.

## XXIII. Other Plan / Confirmation Issues

42.    The deemed good faith provided for in Article VIII.4 of the Plan shall be subject to gross negligence, willful misconduct, and actual fraud.

43.    Notwithstanding anything to the contrary in the Plan, the Injunction shall apply to Unimpaired Holders of Claims and Interests only in connection with enforcing the Exculpation (but not, for the avoidance of doubt, the Releases, to which Holders of Unimpaired Claims and Interests are not bound), and the Injunction shall not otherwise impair Unimpaired Holders of Claims and Interests' rights under non-bankruptcy law

44.    Notwithstanding anything in the Plan, the automatic stay provided under section 362 of the Bankruptcy Code does not apply to Unimpaired parties' rights in connection with recoupment, setoff, or otherwise.

Dated:  White Plains, New York
        May 2, 2019

                                        /s/ Robert D. Drain
                                        THE HONORABLE ROBERT DRAIN
                                        UNITED STATES BANKRUPTCY JUDGE

## **Exhibit A**

**Plan**

## **Exhibit B**

**Confirmation Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| SUNGARD AVAILABILITY SERVICES | ) | Case No. 19-22915 (RDD) |
| CAPITAL, INC. *et al.*,[1] | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF (I) ENTRY OF ORDER**
**APPROVING THE DISCLOSURE STATEMENT FOR**
**AND CONFIRMING THE JOINT PREPACKAGED PLAN**
**OF REORGANIZATION OF SUNGARD AVAILABILITY SERVICES**
**CAPITAL, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11**
**OF THE BANKRUPTCY CODE AND (II) OCCURRENCE OF EFFECTIVE DATE**

**TO ALL CREDITORS, INTEREST HOLDERS, AND OTHER PARTIES IN INTEREST:**

 **PLEASE TAKE NOTICE** that on [\_\_\_], 2019, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), entered an order [Docket No. [●]] (the "Confirmation Order") approving the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Sungard Availability Services Capital, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as the same may have been modified, supplemented, and amended, the "Disclosure Statement") and confirming the *Joint Prepackaged Plan of Reorganization of Sungard Availability Services Capital, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 17] (as modified, amended, and including all supplements and exhibits thereto, the "Plan")[2] (attached as Exhibit A to the Confirmation Order) of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

 **PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on [\_\_\_\_].

 **PLEASE TAKE FURTHER NOTICE** that the Confirmation Order, the Plan, and copies of all documents filed in these chapter 11 cases are available free of charge by visiting https://cases.primeclerk.com/sungardasballots or by calling the Debtors' restructuring hotline at

---

[1] The last four digits of the Debtors' tax identification numbers are Sungard Availability Services Capital, Inc. (7677); Sungard Availability Services Holdings, LLC (6403); Sungard Availability Services Technology, LLC (9118); Inflow LLC (9489); Sungard Availability Services, LP (6195); Sungard Availability Services VeriCenter Inc. (4039); Sungard Availability Network Solutions, Inc. (1034).  The location of the Debtors' service address for purposes of these chapter 11 cases is:  50 Main Street, Suite 1014, White Plains, NY 10606.

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Plan or the Confirmation Order, as applicable.

(844) 217-3093 (toll free) or (347) 849-8079 (international).  You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at:  http://www.nysb.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has approved certain discharge, release, exculpation, injunction, and related provisions in Article VIII of the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Plan and its provisions are binding on the Debtors, the Reorganized Debtors, and any Holder of a Claim or an Interest and such Holder's respective predecessors, successors, and assigns, whether or not the Claim or the Interest of such Holder is Impaired under the Plan, and whether or not such Holder voted to accept the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Plan and the Confirmation Order contain other provisions that may affect your rights.  You are encouraged to review the Plan and the Confirmation Order in their entirety.

Dated: _____, 2019  
New York, New York

/s/ _____

Jonathan S. Henes, P.C.
Emily Geier (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

- and -

Ryan Blaine Bennett, P.C. (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Counsel to the Debtors and Debtors in Possession*

---

**IF YOU HAVE ANY QUESTIONS ABOUT THIS NOTICE,
PLEASE CONTACT PRIME CLERK LLC BY CALLING (844) 205-7534**